IN THE UNITED STATES BANKRUPTCY COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| IN RE: ) | |
| ) | |
| RONNIE R. WALLACE, AND ) | CASE NO. 102-13164 |
| SARAH V. WALLACE, ) | |
| ) | CHAPTER 11 |
| Debtors. ) | |
| ) | JUDGE MARIAN F. HARRISON |
| ) | |
| ) | |
| RONNIE R. WALLACE, ) | ADV. NO. 104-0325A |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| EVVY TAVASCI, INDIVIDUALLY, ) | |
| AND MJJ PRODUCTIONS, INC., ) | |
| ) | |
| Defendants. ) | |
| ) | |

## MEMORANDUM OPINION

This matter came to be heard upon the plaintiff's motion for summary judgment. Based on the pleadings and argument of counsel, the Court finds that summary judgment should be granted to the plaintiff.

## I. BACKGROUND

The plaintiff filed this complaint, seeking to recover damages for breach of contract. The breach is not in dispute. Instead, the issue for consideration is whether the plaintiff mitigated his damages in a commercially reasonable manner.

It is undisputed that on September 20, 2002, Great Gatsby's Auction Gallery, Inc. (hereinafter "Great Gatsby's"), conducted an auction on behalf of the plaintiff in Fayetteville, Tennessee. Defendant Evvy Tavasci (hereinafter "Tavasci") attended the Great Gatsby's auction as a bidder on behalf of defendant MJJ Productions, Inc. (hereinafter "MJJ Productions").

Prior to the auction, Tavasci executed an agreement to participate in the auction. Tavasci was the representative of MJJ Productions with authority to act on its behalf. Tavasci bid on items at the auction and was the successful bidder on certain items, totaling $467,202.50. The defendants failed to pay either the plaintiff or Great Gatsby's for the items purchased at the auction, and Great Gatsby's assigned all its rights, title, and interest in the agreement to the plaintiff.

Thereafter, on November 6, 2002, the plaintiff filed for bankruptcy protection pursuant to Chapter 11. On August 26, 2003, the debtor filed an expedited motion to sell

antiques free and clear of liens. On September 15, 2003, an agreed order resolving a limited objection to the sale was entered by the Court. The agreed order provided in part:

> The Debtors are authorized to sell the personal property consisting of antiques and jewelry (the "Property") listed in the Motion pursuant to 11 U.S.C. § 363(b)(1) by auction during the first week of October 2003 in Dallas, Texas.

The agreed order did not address the specifics of the sale, nor did it address whether the sale was commercially reasonable under Georgia law.

On August 26, 2003, the plaintiff filed an application for approval of the employment of the auctioneer, Clements Antiques of Tennessee, Inc. (hereinafter "Clements"), for the sale of the antiques. The U.S. Trustee filed an objection to the application on September 3, 2003, and on September 26, 2003, the Court entered an agreed order resolving the U.S. Trustee's objection. The order addressed compensation of Clements, reporting of the sale, and the handling of proceeds. Again, this agreed order did not deal with whether the sale was commercially reasonable.

Pursuant to the Court's orders, the plaintiff retained the services of Clements to conduct the sale in Forney, Texas (a suburb of Dallas, Texas), on October 2, 2003, through October 5, 2003, in which the items previously purchased by Tavasci and MJJ Productions were offered for sale. Previously, on September 23, 2003, the debtor sent notice to the

3-U.S. Bankruptcy Court, M.D. Tenn.

defendants of the disposition of the antiques at the Forney, Texas, sale, and on September 26, 2003, the defendants received notice of the sale.

The plaintiff is seeking the difference between the sale price agreed upon by the defendants at the Great Gatsby's auction and the sale price of the items sold at the Forney, Texas, auction.[1] In addition, the plaintiff seeks expenses pursuant to Ga. Code Ann. § 11-9-615(a)(1), and late charges pursuant to ¶ 8 of the agreement.[2] The plaintiff asserts that he mitigated his damages in accordance with Georgia law and is therefore entitled to damages. Specifically, the plaintiff submits that the sale should be conclusively deemed to be commercially reasonable because the sale was approved by this Court. The defendants dispute that this Court's orders are conclusive on the issue of commercial reasonableness and assert that there are disputed material facts as to whether the sale was in fact commercially reasonable.

---

[1] The plaintiff is no longer seeking damages for those items that were not in fact offered at the Texas sale.

[2] This provision of the agreement provides:

Remedies with Respect to Indebtedness upon Failure to Pay. In the event of a default by Bidder in its obligation to make timely payment of all sums due Great Gatsby's hereunder, Great Gatsby's (a) shall be entitled to recover late charges from Bidder equal to one and one-half percent (1 ½ %) of the unpaid purchase price for each month or fraction thereof that such purchase price remains unpaid; and (b) shall be entitled to recover from Bidder all costs of collection including fifteen percent of the principal and late fees as attorneys fees if the indebtedness is collected by an attorney at law.

4-U.S. Bankruptcy Court, M.D. Tenn.

Case 1:04-ap-00325    Doc 62    Filed 07/25/05    Entered 07/25/05 10:54:28    Desc Main
Document    Page 4 of 13

## II. SUMMARY JUDGMENT STANDARDS

Federal Rule of Civil Procedure 56(c), as incorporated by Federal Rule of Bankruptcy Procedure 7056, provides that summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The moving party bears the initial burden of informing the court of the basis for its motion and of identifying those portions of the pleadings and/or discovery materials which demonstrate that there is no genuine disputed issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986). Once the moving party meets that initial burden, the burden is shifted to the nonmoving party to go beyond the pleadings and by affidavits, depositions, answers to interrogatories, and/or admissions, designate specific facts showing that a genuine issue of fact does remain for trial. *Id.; see also Klepper v. First Am. Bank*, 916 F.2d 337, 342 (6th Cir. 1990) (nonmoving party "must show sufficient evidence to create a genuine issue of material fact" to prevail).

## III. DISCUSSION

The agreement signed by the defendants to participate in the Great Gatsby's auction provided that Great Gatsby's would have all the rights of a secured party under the Uniform Commercial Code of the state of Georgia, and the parties do not dispute that Georgia law applies. Moreover, there is no dispute that the defendants breached the agreement. Instead,

the defendants contest whether the debtor mitigated his damages in a commercially reasonable manner.

### A. The Court's Orders do not Create a Presumption that the Sale was Commercially Reasonable

The first inquiry is whether this Court's orders created a presumption that the sale was commercially reasonable. The starting point is Ga. Code Ann. § 11-9-627, which provides:

> (a) *Greater amount obtainable under other circumstances; no preclusion of commercial reasonableness.* The fact that a greater amount could have been obtained by a collection, enforcement, disposition, or acceptance at a different time or in a different method from that selected by the secured party is not of itself sufficient to preclude the secured party from establishing that the collection, enforcement, disposition, or acceptance was made in a commercially reasonable manner.
>
> (b) *Dispositions that are commercially reasonable.* A disposition of collateral is made in a commercially reasonable manner if the disposition is made:
>
> > (1) In the usual manner on any recognized market;
> >
> > (2) At the price current in any recognized market at the time of the disposition; or
> >
> > (3) Otherwise in conformity with reasonable commercial practices among dealers in the type of property that was the subject of the disposition.
>
> (c) *Approval by court or on behalf of creditors.* A collection, enforcement, disposition, or acceptance is commercially reasonable if it has been approved:
>
> > (1) In a judicial proceeding;
> >
> > (2) By a bona fide creditors' committee;

6-U.S. Bankruptcy Court, M.D. Tenn.

> (3) By a representative of creditors; or
>
> (4) By an assignee for the benefit of creditors.
>
> (d) *Approval under subsection (c) of this Code section not necessary; absence of approval has no effect.* Approval under subsection (c) of this Code section need not be obtained, and lack of approval does not mean that the collection, enforcement, disposition, or acceptance is not commercially reasonable.

The plaintiff is asserting that because the sale and the employment of Clements were approved by this Court, he has established a prima facie case that the sale was commercially reasonable. Generally, the trier of fact should make this decision, however, it can be a proper subject for summary judgment. ***Davis v. Concord Comm. Corp.***, 209 Ga. App. 595, 434 S.E.2d 571, 575 (1993). Upon a prima facie showing that the sale was commercially reasonable, the defendant "must support his challenge by asserting specific facts showing a genuine issue remains for trial." *Id.* (citing ***Slaughter v. Ford Motor Credit Co.***, 164 Ga. App. 428, 429, 296 S.E. 2d 428 (1982)).

Although the plaintiff attempts to distinguish the facts in ***Carlton Manuf. Inc. v. Bauer***, 207 Ga. App. 850, 429 S.E.2d 329 (1993), the Court finds that this case is on point. In ***Carlton***, the plaintiff argued that the sale was commercially reasonable as a matter of law because the bankruptcy court had approved stipulations by which the plaintiff was given authority to repossess and sell the inventory. The Georgia court pointed out that the stipulated order did not stipulate the procedure or manner by which the sale should be

conducted. Instead, the stipulated order simply authorized the plaintiff to conduct the sale in a manner consistent with non-bankruptcy law. *Id.* at 851. Accordingly, the court held that "the order cannot reasonably be interpreted as advance judicial approval of the sale as contemplated in [Georgia's version of the Uniform Commercial Code]."[3] *Id.* (citing *In re Appalachian Pocahontas Coal Co.*, 31 B.R. 579 (S.D. W. Va. 1983), which held that stipulation entered as order permitting certain secured property to be sold by creditor "did not constitute judicial approval giving rise to a conclusive presumption of commercial reasonableness").

In reviewing the motion to sell the property and the application to employ Clements, as well as the respective orders, the Court cannot find as a matter of law that the orders approved the method, manner, time, place, and other terms of the sale. While some aspects of the sale were approved, the orders did not approve the sale to the extent required under Georgia law to create a presumption of commercial reasonableness.

Accordingly, the Court finds that the plaintiff has not shown as a matter of law, based on Ga. Code Ann. § 11-9-627(c)(1), that the sale was commercially reasonable.

---

[3] The court in *Carlton* was interpreting Ga. Code Ann. § 11-9-507(2), the predecessor to Ga. Code Ann. § 11-9-627(c).

8-U.S. Bankruptcy Court, M.D. Tenn.

## B. The Undisputed Facts as to the Circumstances of the Sale Show that it was Commercially Reasonable

The failure of the presumption does not end the Court's inquiry. The plaintiff also asserts that even if the Court's orders did not give judicial approval of the sale, the undisputed facts show that the collateral was sold in a commercially reasonable manner. The Court agrees.

Pursuant to Ga. Code Ann. § 11-9-627(b)(3), the "disposition of collateral is made in a commercially reasonable manner if the disposition is made . . . [o]therwise in conformity with reasonable commercial practices among dealers in the type of property that was the subject of the disposition."

While presented by the defendants, the Court finds that the depositions, affidavits, and answers to interrogatories support the plaintiff's assertion that the sale was conducted in a commercially reasonable manner. In particular, the Court relies upon the depositions of Theodore Tzavaras, the owner of Great Gatsby's, Charles W. Clements, Jr., the owner of Clements, and Scotty Wade Wallace, the plaintiff's son, as well as the plaintiff's responses to interrogatories and attached exhibits.

Clements has been in the antiques business for over 65 years and performed many antiques auctions. Clements is a family business, started by Mr. Clements' father in 1938, and Mr. Clements has officially worked in the business for almost 30 years.

The auction in Forney, Texas, was advertised all over the United States and in Europe through newspapers, magazines, and flyers, as well as through the internet, mailing lists, and telephone calls. Forney is located near Dallas, Texas, and is known as a center for antiques and decorative pieces, with several dealers. Approximately 200 to 300 people bid on the items during the sale. The Forney, Texas, auction was conducted much like the Great Gatsby's sale, only at a different location. Moreover, while the defendants were not notified of the motions regarding the sale that were filed in this Court, the plaintiff sent a certified letter to the defendants, which they admit receiving, setting forth the location and date of the sale. At the sale, Mr. Clements sold some of his own items, just as Tzavaras had done at the Great Gatsby's sale. Also, Mr. Clements and Scotty Wallace both admitted to having purchased items at the auction. However, Mr. Clements did not know whether any of the items he purchased were originally purchased by the defendants, and Scotty Wallace stated under oath that he did not buy any of these items. Mr. Clements also bid on items to encourage bidding.

Based on these facts, the plaintiff has presented a prima facie case that the sale was commercially reasonable. Therefore, it was the defendants' burden to support their challenge by asserting specific facts showing that a genuine issue remains for trial. *Davis v. Concord Comm. Corp.*, 209 Ga. App. 595, 434 S.E.2d 571, 575 (citing *Slaughter v. Ford Motor Credit Co.*, 164 Ga. App. 428, 429, 296 S.E. 2d 428).

To meet this burden, the defendants submit that the sale was unreasonable because Scotty Wallace and Mr. Clements both bid on items at the auction, because the auction included items other than the ones originally sold to the defendants, and because terms of the auction were changed at the last minute so that Mr. Clements could bid on items at the sale. Taking these facts as true, the defendants have still failed to show how these facts make the sale commercially unreasonable. There is no proof that Mr. Clements purchased any of the items in question, and the only proof before the Court is that Mr. Clements' bidding furthered, not hindered the prices. Moreover, Scotty Wallace specifically testified that he did not purchase any of these items.

The defendants also assert that the sale was commercially unreasonable because the price obtained at the Forney, Texas, auction was less than the price obtained at the Great Gatsby's auction. As pointed out by the plaintiff, Georgia law is clear that:

> The fact that a greater amount could have been obtained by a collection, enforcement, disposition, or acceptance at a different time or in a different

11-U.S. Bankruptcy Court, M.D. Tenn.

method from that selected by the secured party is not of itself sufficient to preclude the secured party from establishing that the collection, enforcement, disposition, or acceptance was made in a commercially reasonable manner.

Ga. Code Ann. § 11-9-627(a). Moreover, Mr. Clements, in his undisputed testimony, stated that a graph of the antiques business would look like a heartbeat, in that some items sell high and some sell low. Mr. Clements also testified that he felt the sale was very strong, noting the uncertainty of the economy at the time.

The Court finds that the defendants have not and cannot show that there is a genuine issue of fact regarding the commercial reasonableness of the sale. To recap, the undisputed proof shows that the sale was well advertised, the sale was conducted by an auctioneer with many years of experience, 200-300 people bid on the items at the sale, the sale was held in a location known for its antiques and near a large metropolitan area (with an international airport), and the sale was done by bidding, which was most likely increased by the bidding of the auctioneer.

## IV. CONCLUSION

Accordingly, the Court finds that the plaintiff's motion for summary judgment should be granted as to the issue of the commercial reasonableness of the method, manner, time, place, and terms of the sale. However, the proof on the amount of damages is unclear from the record. Thus, damages will be determined at trial.

An appropriate order will enter.

/s/ Marian F. Harrison
MARIAN F. HARRISON
UNITED STATES BANKRUPTCY JUDGE

13-U.S. Bankruptcy Court, M.D. Tenn.